UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

VERSATILE HOUSEWARES &
GARDENING SYSTEMS, INC.,

        Plaintiff,

v.                                 Case No. 09-C-846

THILL LOGISTICS, INC.; SAS GROUP, INC.;
NAT, LLC; and JORDAN DREW CORPORATION,

        Defendants.

## ORDER TRANSFERRING CASE

Plaintiff Versatile Housewares & Gardening Systems, Inc. ("Versatile") filed this lawsuit against defendants Thill Logistics, Inc. ("Thill"), SAS Group, Inc. ("SAS"), NAT, LLC ("NAT"), and Jordan Drew Corporation ("Jordan Drew"), asserting claims of trademark and copyright infringement, breach of contract, fraudulent trademark representation, and fraudulent representations. There are several motions pending before the Court. Versatile moved for a preliminary injunction to enjoin SAS, Thill and NAT from infringing its trademark and copyrights and making false representations. (Doc. # 4.) SAS and Jordan Drew filed a motion to dismiss under Rule 12(b)(3), or to transfer the case to Southern District of New York, White Plains Division, invoking a venue/forum selection clause in an agreement between SAS and Versatile. (Doc. # 13.) Finally, Jordan Drew also moves for dismissal under Rule 12(b)(2), asserting a lack of personal jurisdiction. (*Id.*) Because I conclude that the contractual forum selection/venue provision between Versatile and SAS is mandatory and applies, the Court will grant the motion to transfer this case.

## BACKGROUND

This case arises out of a business relationship between Versatile and SAS. Sometime around November 2006, SAS entered into contract negotiations with Versatile and its president, Thomas Motosko, regarding the right to distribute Versatile's product, an auger for use in the garden.[1] (Decl. of Scott Sobo ¶ 27.) In December 2006, Versatile and SAS entered into an exclusive Worldwide Distribution and Royalty Agreement ("Distribution Agreement") for the garden product, which permitted SAS the exclusive right to distribute the product. (*Id.* ¶ 30.) The Distribution Agreement contained the following provisions under a section entitled "**GOVERNING LAWS AND JURISDICTION**":

> **8.1 New York Law Shall Apply**
>
> Interpretation and enforcement of this Agreement shall be construed and governed by the laws of the State of New York, without regard to choice of law principles.
>
> **8.2 Jurisdiction**
>
> Any dispute which may arise under this Agreement or concerning any business dispute between the parties to this Agreement, shall be resolved by the State or Federal Courts located in the State of New York, Westchester County. The parties agree to submit to the jurisdiction of all such courts for the purpose of resolving any such dispute(s). The judgment of such court(s) shall be granted full faith and credit by the courts of all such other countries where the parties may be located at the time such judgment is entered.

(Decl. of Scott Sobo, Ex. E. at 5.) The same month, Versatile, Motosko and SAS entered into a Patent Assignment Agreement, under which Versatile and Motosko assigned the patent to SAS.

---

[1] The auger was also marketed as a tool to mix paint and concrete.

2

Case 1:09-cv-00846-WCG    Filed 12/07/09    Page 2 of 13    Document 28

The Patent Assignment Agreement contained the following provision:

> Governing Law. This Agreement shall be construed in accordance with, and governed in all respects by, the laws of the State of New York, without regard to conflicts of law principles. Any dispute concerning this assignment shall be resolved by courts located in the State of New York and the Parties consent to the jurisdiction of such courts for that purpose.

(Decl. of Scott Sobo, Ex. F at 2.)

With the Distribution Agreement signed and the patent assigned to SAS, SAS began marketing the auger, selling it under the trademark "Awesome Auger." Jordan Drew, a New York corporation affiliated with SAS, applied to the U.S. Patent and Trademark Office for the trademark "Awesome Auger," and licensed the rights to the mark to SAS. Versatile had applied for a trademark for the same name in Wisconsin, but never with the U.S. Patent and Trademark Office.[2] Versatile and Motosko assisted SAS in creating packaging for the product, and provided instructions and photographs which SAS understood to be gifts or naked licenses made in Versatile's self-interest. SAS was able to sell a number of the augers, and paid Versatile over $137,000 in royalties under the Distribution Agreement. SAS learned in August 2008 that Versatile was selling a similar garden tool which SAS considered nearly identical to the "Awesome Auger." Versatile owned up to doing so, but asserted that the product did not fall within the provision of the patent which had been assigned to SAS. SAS had its lawyers look into the patent Versatile and Motosko had assigned it and compared the patent to the product it had been selling under the trademark "Awesome Auger." SAS determined that the tool lacked a hollow cavity at its tip, which was a claim specifically required by the patent. Because it concluded that what it was selling was not

---

[2] Versatile alleges that it began selling a gardening tool under the trademark "AWESOME AUGER" sometime around 2001. (Compl. ¶ 13.)

covered by the patent, SAS decided that it never owed Versatile royalties under the Distribution Agreement. SAS cut off payment of royalties to Versatile in July 2008. Versatile, on the other hand, maintains that SAS changed the design of the tool by shortening the extension shaft in order to reduce the cost of shipping the product from China, where it is manufactured. According to Versatile, this shortened tool cannot be used by most adults standing upright, contrary to the representations made in SAS' advertising. Having looked into the patent it had been assigned, SAS made the further conclusion that the product Versatile was selling did fall within the claims of the patent. SAS thus invoked the reverse royalty provision in the Distribution Agreement in August 2008, claiming that Versatile owed it royalties.

Versatile's claims against SAS are trademark infringement (in three forms, as violation of 15 U.S.C. § 1125, Wis. Stat. ch. 132, and Wisconsin common law), fraudulent representations (in violation of 15 U.S.C. § 1125 and Wis. Stat. § 100.18), copyright infringement in violation of 17 U.S.C. § 101 *et seq.*, and breach of contract.

Versatile alleges that Thill, a Wisconsin company, imports the allegedly infringing tool for SAS and distributes it to SAS' customers, accepts payments on behalf of SAS from customers, and stores the tools at one of its warehouses in Wisconsin. The Complaint alleges that NAT is the parent company of Thill. Versatile brings the same claims of trademark and copyright infringement against Thill and its parent, NAT, along with claims of contributory trademark infringement and contributory copyright infringement against both NAT and Thill.

Finally, Versatile's single claim against Jordan Drew is fraudulent trademark registration in violation of 15 U.S.C. § 1092. Versatile's allegation against Jordan Drew is that its counsel knew

4

Case 1:09-cv-00846-WCG   Filed 12/07/09   Page 4 of 13   Document 28

that Versatile held the "AWESOME AUGER" mark as early as November 2006, and as a result its June 9, 2008 registration with the U.S. Patent and Trademark Office was fraudulent.

# DISCUSSION

**I. SAS and Jordan Drew's Motion to Dismiss or Transfer**

Jordan Drew and SAS contend that dismissal under Rule 12(b)(3), or transfer to the Southern District of New York, White Plains Division, is warranted because the venue/forum selection clause in the Distribution Agreement is mandatory and should be enforced. The Seventh Circuit has stated that § 1404(a) is the appropriate authority to transfer a case on the basis of a forum-selection clause where venue is properly laid. *In re LimitNone*, 551 F.3d 572, 575-76 (7th Cir. 2008) (*per curiam*).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district or division where it might have been brought." 28 U.S.C. § 1404(a). The party moving for transfer carries the burden of showing that transfer is appropriate. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986). The first question is whether venue would be proper in the Southern District of New York, White Plains Division. The parties have not indicated that any special venue provision other than the general venue statute is applicable. That statute provides, in pertinent part, that a federal-question case may be filed in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). SAS and Jordan Drew contend that the situs of the material events in this case is New York. While Versatile asserts that Wisconsin has a stronger connection to its claims, had Versatile

not also sued Wisconsin entities Thill and NAT, venue would be proper in New York under 28 U.S.C. § 1391(b), as SAS and Jordan Drew reside in New York. The Court is satisfied for purposes of deciding the motion that this action could have been brought in the Southern District of New York.

**Forum Selection Clause**

The main reason SAS and Jordan Drew point to for transfer is the forum selection clause in the Distribution Agreement between SAS and Versatile. While a forum selection clause is not dispositive under § 1404(a), its presence is a "significant factor that figures centrally" in deciding a motion under § 1404(a). *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 31 (1988). Forum selection clauses are "valid and enforceable" under federal law. *Muzumdar*, 438 F.3d at 761 (citing *IFC Credit Corp. v. Aliano Bros. Gen. Contactors, Inc.*, 437 F.3d 606 (7th Cir. 2006)). "Like any contract provision, a forum-selection clause will be enforced unless enforcement would be unreasonable or unjust or the provision was procured by fraud or overreaching." *Paper Express, Ltd. v. Pfankuch Maschinen GmbH*, 972 F.2d 753, 757 (7th Cir. 1992) (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972); *Northwestern Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990)).

I turn to the initial question of whether the clause here is mandatory or permissive. The difference between a permissive and a mandatory forum selection clause is that parties to a permissive clause consent to litigate in a specified place, whereas a mandatory forum-selection clause vests jurisdiction and venue exclusively in the place specified. *See Paper Express*, 972 F.2d at 755. Versatile argues that the provision is not mandatory, but its argument is unconvincing. It asserts that the language of the Distribution Agreement lacks explicit language indicating that New

6

York is the "exclusive" venue, or any language requiring that all lawsuits "shall be filed" in New York. (Pl.'s Br. in Opp. at 12.) Versatile makes the argument that the effect of paragraph 8.2 of the Distribution Agreement is really just that "any" lawsuit–instead of "all lawsuits"–filed in New York "shall be resolved" by a New York court, as opposed to a court in another jurisdiction, such as Texas or Turkey.

I disagree. Other courts interpreting forum selection clauses without the words "exclusive" or "exclusively" have routinely held that language such as "any dispute," "any claim," or "shall," is mandatory, not permissive. *Bremen*, 407 U.S. at 2 (holding that forum selection clause stating that "any" dispute arising from a contract "must" be brought before a London court is binding on the parties, unless the clause is shown to be unreasonable or unjust); *Person v. Google Inc.*, 456 F. Supp. 2d 488, 494 (S.D.N.Y. 2006) (holding that "[any] dispute or claim arising out of or in connection with this Agreement shall be adjudicated in Santa Clara County, California" constituted a mandatory venue selection clause) (alteration in original); *Salis v. Am. Export Lines*, 331 Fed.Appx. 811, 2009 WL 1528767 (2d Cir. June 2, 2009) (provision which included "Any claim or dispute arising under or in connection with this Bill of Lading . . . shall be referred to and decided by Oslo City Court, Norway" held to be mandatory). Here, the Distribution Agreement reads, in pertinent part, "Any dispute which may arise under this Agreement or concerning any business dispute between the parties to this Agreement, shall be resolved by the State or Federal Courts located in the State of New York, Westchester County." Because this language does not create ambiguity and is not amenable to the reading Versatile recommends, I find that this provision of the Distribution Agreement is a mandatory venue/forum selection clause.

7

I now consider whether Versatile can avoid enforcement of the venue/forum selection provision on the basis that it is unreasonable or unjust.[3] *See Paper Express*, 972 F.2d at 757. "[T]he party seeking to escape the contract must demonstrate that 'the forum will be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *Id*. at 758 (quoting *Bremen*, 407 U.S. at 18.) Versatile asserts that it would be unreasonable to apply the clause because: (1) its claims here are beyond the scope of the clause; (2) it would be inconvenient to the parties and the witnesses to move the case to New York; and (3) a transfer to New York would be not be in the interest of judicial economy.

### Scope of the Clause

Regarding the scope of the clause, Versatile contends that its claims against SAS for deceptive advertising, copyright and trademark infringement do not "arise under" the Distribution Agreement or concern "any business dispute between" it and SAS.[4] Versatile's own complaint demonstrates the implausibility of its argument that the claims against SAS did not "arise under" the Distribution Agreement.

Versatile alleges that its principal officer, Motosko, invented the gardening tool and obtained U.S. Patent 6,955,227 on October 18, 2005. (Compl. ¶¶ 13-14.) It also says it negotiated with SAS over a distribution and royalty agreement regarding the tool, culminating in the Distribution Agreement. (*Id*. ¶¶ 15-17.) According to the complaint, the parties apparently later informally

---

[3]There is nothing to suggest that fraud or mistake played any role in Versatile entering into the Distribution Agreement.

[4]Versatile concedes, as it must, that because its tenth cause of action is that SAS breached the Distribution Agreement, this claim would be covered by the venue/form selection clause were it to be enforced. (Pl.'s Br. in Opp. at 11 n.8.)

8

amended the agreement to provide SAS the "license" of Versatile's "Awesome Auger" trademark and Versatile's related copyrighted work. (Compl. ¶ 21.) Versatile also avers that "SAS's royalty payments [under the Distribution Agreement] were sufficient consideration for use of all of Versatile's intellectual property." (*Id*. ¶ 22.) Versatile further alleges that SAS' failure to make royalty payments for the intellectual property terminated the Distribution Agreement. (*Id*. ¶ 32.)

While Versatile is correct to note that it alleges claims not rooted in contract but deriving from federal statutes, state statutes, and its common law rights, the Court cannot turn a blind eye to the contractual setting in which its claims arose. *See Kochert v. Adagen Medical Intern., Inc.*, 491 F.3d 674, 680 (7th Cir. 2007) ("alleging a noncontract claim or remedy does not 'obliterate the contractual setting' for purposes of the forum-selection clause.") Because the complaint itself demonstrates that Versatile's claims of trademark and copyright infringement and false advertising arise under the Distribution Agreement, such claims are within the scope of the mandatory venue/forum selection clause. Further, even if they did not "arise from" the Distribution Agreement, I find that they plainly concern a "business dispute" between Versatile and SAS, putting such claims squarely within the scope of the forum selection provision.

### Convenience

Having found that Versatile's claims against SAS are within the scope of the clause, I now turn to Versatile's argument that enforcement of the agreement would be too inconvenient to the parties and witnesses. In this regard Versatile's chief concern relates to the travel restrictions of its principal officer, Motosko, a Wisconsin resident, whom counsel for Versatile swears is unable to travel by commercial aircraft. (Third Decl. of Michael T. Griggs ¶¶ 2-4.) Versatile also believes that

9

most of the evidence is located in Wisconsin, and observes that as defendants NAT and Thill reside in Wisconsin, moving the case to New York would inconvenience them.

Because Versatile agreed to the venue/forum selection clause, it waived any right to claim inconvenience. *See Donovan,* 916 F.2d at 375, 378. Versatile's claim that Motosko would be inconvenienced fares no better; because Motosko is Versatile's principal officer any inconvenience related to his travel would have been taken into account at the time Versatile entered into the Distribution Agreement. *See Donovan*, 916 F.2d at 376 ("[T]he inconvenience to employees would have been taken into account when the clause was drafted."). Indeed, Motosko himself signed the Distribution Agreement on behalf of Versatile. Further, Versatile is hard pressed to argue Motosko's inconvenience as a basis to avoid the enforcement of the venue/forum provision as Motosko also agreed to litigate "[a]ny dispute concerning" the Patent Assignment Agreement with SAS in New York. Finally, Versatile has provided the Court with information indicating that Motosko has traveled or contemplates traveling across the country for business.

Versatile expresses concern that two of its adversaries, Thill and NAT, would also be inconvenienced should this case be transferred to New York. Thill and NAT have not weighed in on the motion, so it appears that neither defendant harbors great concern that defending this case in New York would be too great a burden. Discounting Versatile's claims of inconvenience to itself and Motosko, the Court finds insufficient reason to conclude that the parties or the witnesses would be inconvenienced to such an extent that enforcement of the venue/forum provision would be unreasonable or unjust.[5]

---

[5]SAS and Jordan Drew maintain that the key witnesses and evidence are located in New York, not Wisconsin. (Defs.' Reply Br. at 3.)

10

**Judicial Economy**

Versatile's last argument against transfer is that it would be contrary to the interest of judicial economy. It points to this Court's decision in *Curwood Inc. v. Prodo-Pak Corp.*, No. 07-544, 2008 WL 644884 (E.D. Wis. Mar. 7, 2008), in which the Court noted that judicial economy is a consideration that underlies a motion to transfer under § 1404(a). While the Court made this observation in *Curwood*, the main reason the Court did not transfer that case was that some of the plaintiff's claims did not fall within the forum selection clause, and splitting the case so as to require a duplication of efforts would be wasteful. That would not be the case here, as I have already found that all of Versatile's claims against SAS fall within the scope of the forum selection clause. Further, the Court in *Curwood* noted its agreement "with those courts that have held that 'where a plaintiff's suit is truly broader than the forum selection clause and the structure of the complaint is not an attempt to avoid the forum selection clause, enforcement of the forum selection clause would be unreasonable.'" 2008 WL 644884, at *7 (quoting *Pegasus Transp., Inc. v. Lynden Air Freight, Inc.*, 152 F.R.D. 574, 577 (N.D. Ill. 1993)). Here, SAS and Jordan Drew contend that Versatile's tort-like claims against SAS, Thill and NAT are merely pled in an effort to avoid operation of the forum selection clause.

Versatile argues against transfer on the assumption that the case would be split, leaving it to prosecute its claims against Thill and NAT in this Court and its claims against SAS and Jordan Drew in the Southern District of New York. SAS and Jordan Drew argue that Versatile brought this problem upon itself, as the only reason it brought claims of trademark and copyright infringement against Thill and NAT was in an attempt to avoid operation of the venue/forum selection provision. In other words, SAS and Jordan Drew contend that Versatile's naming of Thill and NAT are

11

analogous to fraudulent joinder in a diversity case. While Thill and NAT answered the complaint and have not moved to dismiss the claims against them, counsel for SAS and Jordan Drew argues that such allegations are wholly conclusory and do not plausibly suggest liability on the part of either Thill or NAT. The Court sees no reason to split this case in half, so it will order that all of Versatile's claims, including those against Thill and NAT, will be transferred to the Southern District of New York, White Plains Division.

**II. Jordan Drew's Motion to Dismiss for Lack of Personal Jurisdiction**

Jordan Drew moves for dismissal of the claim against it under Rule 12(b)(2), contending that there is a lack of personal jurisdiction. I need not resolve this issue of personal jurisdiction, as I have already found that transfer to the Southern District of New York is warranted under the circumstances. *See In re LimitNone, LLC*, 551 F.3d at 576 (noting Supreme Court's approval of addressing venue before personal jurisdiction in *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979)).

**CONCLUSION**

It would be unjust to SAS to deprive it of the benefit of the contractual provision for which it bargained, the right to litigate its claims against Versatile on its home turf. Versatile's argument that the forum selection clause contained in the Distribution Agreement is not mandatory is unconvincing, as is its argument that it would be unreasonable or unjust to enforce the provision. Having considered the convenience of the parties and witnesses, and the interest of justice, the

12

Court concludes that this case should be transferred to the Southern District of New York, White Plains Division.

**IT IS THEREFORE ORDERED** that the motion to transfer this case is **GRANTED**. Pursuant to 28 U.S.C. § 1404(a), the Clerk shall transfer this case to the Southern District of New York, White Plains Division.

**IT IS FURTHER ORDERED** that Jordan Drew's motion to dismiss for lack of personal jurisdiction is **DENIED** as moot.

**IT IS ALSO ORDERED** that the motion to dismiss under Rule 12(b)(3) is **DENIED** as moot.

Dated this   4th   day of December, 2009.

s/ William C. Griesbach
William C. Griesbach
United States District Judge